**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Kootenia Homes, Inc.,

Plaintiff,

**MEMORANDUM OPINION AND ORDER**

v.

Civil No. 00-1117 ADM/AJB

Reliable Homes, Inc., Rick Toston,
Michael Gleason, Todd Purtell,
Ann Weisensee, John Doe and Mary Roe,

Defendants.

---

Barbara M. Ross, Esq., Best & Flanagan, L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Robert L. Bach, Esq., and Daniel R. Kelly, Esq., Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Defendants.

---

## INTRODUCTION

On October 29, 2001, the undersigned United States District Judge heard Cross-Motions for Summary Judgment by Plaintiff Kootenia Homes, Inc. ("Plaintiff"), [Doc. No. 47] and Defendants Reliable Homes, Inc., Rick Toston, Michael Gleason (collectively "Defendants") [Doc. No. 37]. For the reasons set forth below, Plaintiff's Motion is denied and Defendants' Motion is granted.

## BACKGROUND

Plaintiff brings this action against Defendants for copyright infringement under 17 U.S.C. §§ 101 *et. seq.*, and unjust enrichment. Plaintiff is a Minnesota corporation in the business of designing and building custom homes. Plaintiff is one of ten custom home builders authorized to

FILED JAN 3 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JAN 3 2002
DEPUTY CLERK

build in the Wedgewood development of Woodbury, Minnesota. In 1998, Plaintiff created a design and built a home for David and Jennifer Hoeffel at 3555 Crestmore Terrace in the Wedgewood development (the "Hoeffel Home"). David Frosch ("Frosch") fashioned the floor plan for the Hoeffel Home and Susan Welles ("Welles") drafted it. Both Frosch and Welles were Plaintiff's employees. Plaintiff's claims are based on the architectural plan[1] for the Hoeffel Home.

Defendant Reliable Homes, Inc., ("Reliable"), a Minnesota corporation, also is a designer and builder of custom homes authorized to do business in the exclusive Wedgewood development. Defendant Rick Toston ("Toston") owns Reliable and employs Defendant Michael Gleason ("Gleason") as a designer. Reliable built a home for Todd Purtell and Ann Weisensee, husband and wife (the "Purtells").[2] This home is the nexus of this dispute. Plaintiff alleges that the floor plan Reliable designed for the Purtells' home ("Purtell Home") is a copy of the Hoeffel Home.

In the summer of 1999, the Purtells initiated plans to move from Memphis, Tennessee to the Twin Cities area. *See* Weisensee Dep., at 6-7. Weisensee, a pediatric radiologist accepted a position at Woodlands Hospital in Woodbury. *Id.* at 12. In August, 1999, the Purtells visited the Wedgewood community in Woodbury. *Id.* at 13. The Purtells completed a "Wedgewood Guest Card" that the development office supplied to all of the authorized builders. *See* Ziton Dep., at

---

[1] The plan was registered with the United States Copyright Office as an architectural work by Kootenia Homes and bears the copyright registration number VAu467-477. Becker Aff. ¶ 6.

[2] Plaintiff and Defendants Purtell and Weisensee have entered a stipulation for dismissal.

25-28.

Plaintiff's exclusive real estate agent, Kim Ziton, contacted the Purtells by telephone and by mailing them a package of marketing materials. *Id.* The Purtells communicated their intention to travel to Minnesota and select a lot and a builder. *Id.* On October 16, 1999, Ziton met with the Purtells at the Plaintiff's model home. She showed the Purtells several of Plaintiff's floor plans. *Id.* at 31. Ziton also presented the Purtells with the Hoeffel Home floor plan because it matched the Purtells' general description of the type of home they intended to build. *Id.* She arranged for the Purtells to tour the Hoeffel Home because it shared many of the design features Weisensee had described as desirable to them. *Id.* at 54, 55.

On October 17, 1999, the Purtells toured the Hoeffel Home for approximately 45 minutes. *See* Ziton Dep., at 36; Weisensee Dep., at 29; Purtell Dep., at 85-86; Hoeffel Dep., at 45-47. The Purtells did not take any measurements, photographs, or notes during the tour of the Hoeffel Home. *See* Hoeffel Dep., at 47. The Hoeffels did not provide the Purtells, or anyone at Reliable,[3] with a copy of their floor plan. *Id.* at 24.

On October 18, 1999, the Purtells met with Toston of Reliable. *See* Weisensee Dep., at 38. Prior to this meeting, the Purtells had faxed Toston a photocopy of a "dream home" floor plan from a magazine. *See* Kelly Aff., Ex. M. Although the Purtells appreciated that their actual floor plan would not have as much square footage as this "dream home" floor plan, it included some design features they wanted to incorporate into their own plan. *See* Purtell Dep., at 21; Kelly Aff., Ex. M. Using the "dream home" as a starting point, the Purtells and Toston discussed

---

[3] The Hoeffels testified that they never allowed a Reliable employee inside their home. *Id.*

general design elements of the home they intended to build. Based upon their discussions with Toston, the Purtells chose Reliable to be their builder. *See* Weisensee Dep., at 40-43.

On October 21, 1999, Reliable's designer, Gleason, conversed with the Purtells by telephone about specific design features to include in their new home. *See* Gleason Dep., at 30-40; Kelly Aff., Ex. N. The Purtells listed specific elements they desired, including a master bedroom on the east side of the home, a great room in the center, with the kitchen to the west, a walk-out basement, an angled garage, a breakfast room off the kitchen with a sunroom on the southwest, a dining room in the front, a sitting room off the master bedroom, and a master bathroom off the master bedroom. *See* Weisensee Dep., at 61. Based on this discussion, Gleason created two preliminary sketches. *See* Gleason Dep., at 44-48; Kelly Aff., Ex. V. Thereafter, he created a straight-line drawing, a more formal version of the hand-drawn plan. *See* Gleason Dep., at 54-55, 65-66; Kelly Aff., Ex. O.

Gleason faxed his straight-line drawing to the Purtells. *Id.* at 40. The Purtells made a number of specific changes to the straight-line drawing using a scaled ruler and cut-outs of rooms and features in the home. *See* Purtell Dep., at 45-48; Kelly Aff. Ex. W. The Purtells also requested a variety of changes during several telephone calls with Gleason. *See* Gleason Dep., at 82-83. Because the Purtells desired a "French traditional" appearance for the exterior of their home, they sent photographs to Gleason to better convey their concept. *See* Purtell Dep., at 39-42; Kelly Aff. Ex. X. After extensive discussions and revisions, Gleason and the Purtells completed the final floor plan on December 1, 1999. *See* Gleason Dep., at 25-26, 93.

Gleason submitted the plan to the Wedgewood Architectural Review Committee. *Id.* While at the Wedgewood sales office, Gleason briefly reviewed the Hoeffel Home floor plan to

ensure that the plans were not substantially similar. *Id.* at 20-21, 25. The architectural guidelines for the Wedgewood development provide that no two homes may be of the same design or detail. *Id.* at 26-27. Toston instructed Gleason to review the plans because Toston had heard rumors that Ziton and Frosch were accusing Reliable of copying the Hoeffel Home. *Id.*; Toston Dep., at 19. Both Gleason and Toston deny that they ever viewed the Hoeffel Home floor plan prior to completion of the Purtell Home floor plan. *See* Toston Dep., at 21; Gleason Dep., at 25.

Reliable constructed the Purtell Home from December, 1999, to June, 2000. During construction, Ziton formed an opinion that based on her showing the Purtells the Hoeffel Home, the Defendants had copied Plaintiff's plan. *See* Ziton Dep., at 41-42. On May 3, 2000, Plaintiff initiated this lawsuit.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Copyright law protects architectural plans and drawings as "pictorial, graphic, and sculptural works" and "architectural works." 17 U.S.C. §§ 102(a)(5) & (8). An "architectural work" is the "design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." *Id.* § 101. "The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not

include individual standard features." *Id.* Thus, copyright protection is extended to the plans for the design of a house as well as the house itself. *See J.R. Lazaro Builders, Inc. v. R.E. Ripberger Builders, Inc.*, 883 F.Supp. 336, 339 (S.D. Ind. 1995).

Nevertheless, the outset of a copyright infringement analysis implicates the fundamental principle copyright doctrine: ideas, concepts, and processes are not protected from copying. *See* 17 U.S.C. § 102(b); *Attia v. Society of New York Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999) (citing *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (Hand, J.)). The Copyright Act "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991). "This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship." *Id.* Thus, the Copyright Act protects the specific expression of ideas in the Hoeffel Home plan, but exempts the ideas themselves from protection. *See* 17 U.S.C. § 102(b); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985).

The Second Circuit recently explained this idea/expression dichotomy as it applies to architectural works:

> The problem of distinguishing an idea from its expression is particularly acute when the work of "authorship" is of a functional nature, as is a plan for the accomplishment of an architectural or engineering project. As a generalization, to the extent that such plans include generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on, these are "ideas" that may be taken and utilized by a successor without violating the copyright of the original "author" or designer. On the other hand, to the extent that the copier appropriates not only those ideas but the author's personal expression of them, infringement may be found.

*Attia*, 201 F.3d at 55.

Although there are similarities between the Purtell Home and the Hoeffel Home, the similarities do not go beyond the concepts and ideas contained in the Hoeffel Home plan. When beginning the design process for their new residence, some aspiring homeowners choose architects, designers, and builders based on a "signature" design that can be immediately recognized as uniquely associated with an individual architect, such as Frank Lloyd Wright, Mies Van Der Rohe, or Frank Gehry. *See* Kelly Aff., Ex. K, at 2.[4] It is more common to choose a design of a future residence by selecting one among derivations of historical precedents, such as Tudor, Cape Cod, Colonial, French Provincial, Shaker Style, or even Farm House. *Id.* Moreover, the market forces drive a tendency towards similarity and conformity in single-family residences. *Id.* at 3. People generally choose a neighborhood based upon the knowledge that their home will coexist nicely with their neighbors' houses, within a certain style and price range. *Id.* These market forces create incentives for many subdivisions to impose restrictive covenants on the designs of homes built within them. *Id.* The Wedgewood development is an example of a subdivision where many homes share similarities.

An approved builder in an exclusive subdivision arranges the basic rooms and spaces in a single-family residence to accommodate how the family wishes to live. *Id.* at 4. Many features of a designed residence are common in many other homes. Efficiency concerns and the need for functional living in the home inevitably constrain the number of variations in the configuration of the rooms and spaces. *Id.* Common elements and generic features are shared by all homes.

[4] This exhibit is the expert witness report of Jeffrey A. Scherer.

The Copyright Act does not protect the ideas for juxtaposing these living spaces. *Attia*, 201 F.3d at 55. Based upon the testimony of Frosch, who designed the Hoeffel Home, and Welles, who drafted it, the only original design element that Plaintiff seeks to protect is the location of the home office off the kitchen area. *See* Kelly Aff. ¶ 3. All other design elements of the Hoeffel Home are common to many other homes. *See* Kelly Aff., Ex. K, at 5.

Mindful of the fundamental principle that copyright protection does not extend to ideas, the infringement analysis will be addressed. To establish copyright infringement, Plaintiff must prove its ownership of the copyright and copying by Defendants. *Feist*, 499 U.S. at 361; *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941 (8th Cir. 1992); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987). There is no dispute that Plaintiff registered its Hoeffel Home architectural plan with the United States Copyright Office.

Plaintiff concedes that it possesses no direct evidence that Defendants copied the Hoeffel Home floor plan. *See* Pl. Mem. in Supp., at 19. Plaintiff therefore must demonstrate copying through circumstantial evidence. In this inferential method, copying can be established by demonstrating "access" by the alleged infringer and "substantial similarity" between the works at issue. *See Moore*, 972 F.2d at 941-42; *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1142 (8th Cir. 1989).

Plaintiff can establish access by showing that the defendants had an "opportunity to view or to copy" its work. *Moore*, 972 F.2d at 942. Establishing a "bare possibility" of access is insufficient, Plaintiff must prove that Defendants had a "reasonable possibility" of viewing its work. *Id.* The Hoeffels did not provide anyone at Reliable with a copy of their floor plan.

However, Plaintiff may prove access by showing that a third person with creative input for the designer has had access to the copyrighted work. *See J.R. Lazaro Builders*, 883 F.Supp. at 342. In *J.R. Lazaro Builders*, the court held that when an allegedly infringing homeowner provided guidance into his builder's design of his home, that homeowner's tour of the two copyrighted homes established access on the part of the builder sufficient to preclude summary judgment. *Id.* Similarly, in this case the Purtells toured the Hoeffel Home and subsequently instructed Gleason about the specific design elements they desired in their home. Although the Purtells did not take any measurements, photographs, or notes, their tour minimally suffices to create a factual issue as to the extent of Defendants' access to the Hoeffel Home design.

Plaintiff must not only demonstrate access but also must establish a substantial similarity between its work, the Hoeffel Home, and the alleged copy, the Purtell Home. Determining whether or not a substantial similarity exists involves a two-step analysis. *Moore*, 972 F.2d at 945. First, the Court must extrinsically analyze the similarity of ideas, focusing on objective similarities in the details of the works. *Id.* Second, if there is substantial similarity in ideas, the Court must evaluate the similarity of expression using an intrinsic test, depending on the response of the ordinary, reasonable person to the forms of expression. *Id.*; *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987) (citations omitted). In sum, the Court determines whether the details of the works contain objective similarities, and if they do, then the Court examines the works to ascertain if they are so dissimilar that "reasonable minds [could] not differ as to the absence of substantial similarity in expression." *Moore*, 972 F.2d at 945; *Hartman*, 833 F.2d at 120 (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1355-56 (9th Cir.

1984).

First, an analysis of the objective similarities in the details of the works depends on expert testimony. *See Moore*, 972 F.2d at 945. Plaintiff's expert, James Larson, failed to identify similarities in the *details* of the Hoeffel Home and the Purtell Home. Eschewing the actual floor plans and using "bubble diagrams," Plaintiff's expert illustrates *generic* similarities between the homes. *See* Larson Report, figs. 3, 4. Highlighting similarities in the general ideas of locating functional elements of the home is insufficient to create a genuine issue of fact.

Defendants' expert, Jeffrey Scherer, opined that a comparison of the Purtell Home and the Hoeffel Home revealed that each builder arranged standard features as desired by the respective homeowner. *See* Kelly Aff., Ex. K, at 9. Scherer found no originality and no distinguishing elements in the Hoeffel Home. *Id.* Other than what could be identified in any conventional home, he found no substantial similarities in the objective details of the works that suggests copying. *Id.* Scherer concluded that the Purtell Home was derived from ideas of the Purtells, the market, established expectations in the Wedgewood development, their budget, and the experience and skills of Reliable. *Id.*

While there are general similarities between the Purtell Home and the Hoeffel Home, the similarities do not exceed the ideas contained in the Hoeffel Home plan. Indeed, the particular expressions of those ideas are distinct in the two homes. Dissimilarity may be important in determining whether there is substantial similarity. See *Attia*, 201 F.3d at 58.

Defendants identify a multitude of differences between the Hoeffel Home and the Purtell Home. *See* Gleason Aff. ¶ 3. Significant among these differences are: a difference of 193 square

feet of living space and 403 square feet overall, different roof lines, different stair locations, different number and configuration of windows, different juxtaposition of master bathroom and walk-in closets, different layout of mud room and laundry room, and different arrangement of second-floor rooms. *Id.*; Kelly Aff. Ex. K. Further, the Purtell Home features a side-load angled garage while the Hoeffel Home has a front-load garage set at a ninety-degree angle. The contrasting garage locations give the two homes immediately discernable appearances from a curbside point of view.

A close scrutiny of the objective similarities in the details of the home offices reveals distinguishable characteristics. The home office of the Purtell Home has two entrances, allowing entry from the sun room and laundry room. The Hoeffel Home's office has one entry. Thus, the specific details of the home office floor plans create different traffic patterns in the two homes. They are not substantially similar. Any overall general similarities between the Hoeffel Home and the Purtell Home extend only to unprotectable concepts or ideas. *See Attia*, 201 F.3d at 58.

Next, the Court must evaluate the response of the ordinary, reasonable person as to whether or not a substantial similarity in expression exists. Judge Learned Hand phrased this issue as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).

To the untrained eye, the exteriors of the homes are clearly distinct.[5] The Purtell Home has a "French traditional" appearance. As previously discussed, the side-load angled garage of the Purtell Home presents a facade obviously distinct from the Hoeffel Home, which has a front-load garage. The floor plans indicate that walking tours through the Purtell Home and the Hoeffel Home would result in noticeably divergent experiences. The staircases are in different locations. The room sizes vary. The Hoeffel Home is larger. Unlike the Hoeffel Home, the Purtell Home has a second doorway to access the home office directly from the garage. The Purtell Home's master bathroom and walk-in closet design is strikingly different than the arrangement in the Hoeffel Home. The second-floor layouts of the two homes are also distinct. An ordinary, reasonable person could not conclude that a substantial similarity in expression exists.

---

5 



Finally, Defendants have presented extensive documentary evidence, as well as the uncontradicted testimony of Toston, Gleason, Weisensee and Purtell, to demonstrate that they independently created the Purtell Home. Independent creation is a defense to a copyright infringement claim. *See Donald v. Uarco Bus. Forms*, 478 F.2d 764, 765 (8th Cir. 1973); *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 (7th Cir. 1994). Plaintiff merely relies on the similarities between the two homes to rebut Defendants' proof of independent creation. Plaintiff's effort to manufacture a genuine issue of fact as to independent creation is unavailing. In light of the absence of substantial similarity, Defendants' uncontradicted evidence that they independently created the Purtell Home justifies summary judgment. *Cf. Novak v. Nat'l. Broad. Co., Inc.*, 752 F.Supp. 164 (S.D.N.Y. 1990).

Summary judgment on the copyright infringement claim renders Plaintiff's unjust enrichment claim moot.

## CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment [Doc. No. 47] is **DENIED**;

(2) Defendants' Motion for Summary Judgment [Doc. No. 37] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

Ann Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: January 3, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd